UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN

SOUTHERN DIVISION

GRINNING MITTEN LLC d/b/a RAILTOWN
BREWING COMPANY, a Michigan limited
liability company,

        Plaintiff,

v.

BYRON STATION, LLC d/b/a RAILBIRD
TAPHOUSE AND BREWERY, a Michigan
limited liability company,

        Defendant.

Case No.: 1:18-cv-958

Hon.:

MILLER, CANFIELD, PADDOCK and
 STONE, P.L.C.
Joseph M. Infante (P68719)
Kimberly A. Berger (P56165)
Attorneys for Plaintiff
99 Monroe Avenue, Suite 1200
Grand Rapids, MI 49503
(616) 776-6333
infante@millercanfield.com

## COMPLAINT

Plaintiff, Grinning Mitten LLC d/b/a Railtown Brewing Company, a Michigan limited liability company, for its Complaint against Byron Station, LLC d/b/a Railbird Taphouse and Brewery, a Michigan limited liability company, alleges and states as follows:

### PARTIES, JURISDICTION AND VENUE

1. This is an action for infringement of a federally registered trademark arising under 15 U.S.C. §1114, unfair competition, false designation of origin, infringement and misleading

representation of facts arising under 15 U.S.C. §1125(a), and for trademark infringement and unfair competition in violation of Michigan common law.

2. Plaintiff Grinning Mitten LLC d/b/a Railtown Brewing Company ("Railtown") is a Michigan Limited Liability Company with its principal place of business located at 3595 68th St SE, Dutton, MI 49316.

3. Defendant Byron Station, LLC d/b/a Railbird Taphouse and Brewery ("Railbird"), upon information and belief, is a Michigan Limited Liability Company with its principal place of business at 2619 84th St., Byron Center, MI 49315.

4. This Court has original subject matter jurisdiction over this action pursuant to 15 U.S.C. §1121 and 28 U.S.C. §1331 and 1338(b).  Further, this Court has original and exclusive jurisdiction over this matter pursuant to 28 U.S.C. §1338(a) and supplemental jurisdiction over claims arising under state law pursuant to 28 U.S.C. §1367(a).

5. Venue is proper in this District by virtue of 28 U.S.C. §1391(b) because the events giving rise to the claims have occurred and are occurring in this District.

6. The amount in controversy, exclusive of interest and costs, exceeds the sum of Seventy-Five Thousand and 00/100 Dollars ($75,000).

**FACTS**

7. Railtown, which was founded in 2014, is a highly acclaimed craft brewery which distributes its product in Michigan and also operates a successful taproom/restaurant in Dutton, Michigan

8. Railtown just went through a major expansion in the summer of 2018, through which it expanded its brewing capacity and the size of its taproom/restaurant.

9. Given Railtown's location south of the M-6 highway, Railtown draws a substantial portion of its customers from those communities located in the southern metro area of Grand Rapids, Michigan.

10. Railbird is a brewery in planning which seeks to also open a brewery in the southern metro area of Grand Rapids, namely in Byron Center. The planned location is less than ten (10) miles from Railtown's existing brewery/taproom.

11. Railtown is the owner of U.S. Trademark Registration No. 5,224,148 for the word mark "Railtown Brewing Co.," registered since June 13, 2017, and used in commerce since at least as early as August 7, 2014. (the "Railtown Mark")  A true and correct copy of the registration is attached as Exhibit 1.

12. The foregoing registration is valid, enforceable and subsisting.

13. Railtown is also the owner of U.S. Trademark Registration No. 5,376,630 for a Design Mark which incorporates the words "Railtown Brewing Co.", registered since January 9, 2018, and used in commerce since at least as early as August 7, 2014.   A true and correct copy of the registration is attached as Exhibit 2.

14. The foregoing registration is valid, enforceable and subsisting.

15. Railtown has devoted substantial time, effort and resources to the development and extensive promotion of the Railtown Mark and the products and services offered thereunder. As a result of Railtown's efforts, the public has come to recognize and rely upon the Railtown Mark as an indication of the high quality associated with Railtown's beers and taproom services.

16. In mid-2018, Railtown became aware of Railbird's use of a mark substantially similar to the Railtown Mark for identical goods and services, Railbird Taphouse and Brewery (the "Infringing Mark").

17. Railtown's awareness of Railbird came by way of consumer confusion. Railtown fairly regularly fielded inquiries from consumers asking about a presumed second location Railtown was allegedly opening in Byron Center, Michigan. Railtown is not opening a second location in Byron Center and these inquiries relate to Railbird's proposed location. Railtown has also fielded inquiries from individuals seeking employment at Railbird's upcoming brewery in Byron Center, Michigan.

18. Railtown contacted Railbird regarding the confusion due to its use of the Infringing Mark, however Railbird has refused to cease use of the Infringing Mark.

19. Railbird's unauthorized and infringing use has, and is likely to continue to, confuse, mislead and deceive consumers as to the source or origin of the goods and services available from Railbird.

20. Railtown has not consented to, sponsored, endorsed or approved of Railbird's use of the Railtown Mark in connection with the promotion, marketing or sale of any goods or services by Railbird.

21. Upon information and belief, Railbird's actions are willful and reflect its intent to confuse consumers and profit from the goodwill and consumer recognition associated with the Railtown Mark.

22. Upon information and belief, Railbird was aware of the Railtown Mark before commencing use of the name Railbird Taphouse and Brewery.

23. Upon information and belief, Railbird was aware that it was infringing the Railtown Mark, but dismissed those concerns as it deemed Railtown as just a "strip mall brewery."

24. On July 5, 2018, counsel for Railtown sent a cease and desist letter to Railbird regarding Railbird's use of a name that infringed upon the Railtown Mark.

25. On July 26, 2018, counsel for Railbird responded that Railbird would not cease using the infringing mark. In that letter, counsel for Railbird cited to a U.S. Trademark Registration Railbird had received for "RAILBIRD TAPHOUSE BREWERY", Reg. No. 5,424,391 (Exhibit 3.)

26. In response to the July 26, 2018 letter, Railtown asserted its belief that Railbird had misrepresented certain facts to the United States Patent and Trademark Office to receive its trademark registration by representing that it had used the RAILBIRD TAPHOUSE BREWERY mark in commerce since at least October of 2017. *Id*.

27. Railbird's representation could not be factually accurate because, upon information and belief, Railbird, as of the date of this Complaint, is not open for business and is not licensed either by the Michigan Liquor Control Commission or the Alcohol Tax and Trade Bureau to manufacture and sell alcohol.

28. Before being able to legally sell alcohol as a brewery/brewpub, a company must be licensed by both the Michigan Liquor Control Commission and the Alcohol Tax and Trade Bureau.

29. Upon information and belief, following Railtown's allegation of misrepresentation, Railbird filed paperwork with the United States Patent and Trademark Office to surrender the RAILBIRD TAPHOUSE BREWERY registration. (Exhibit 4).

30. Despite the above, Railbird refuses to cease its use of the infringing mark.

31. Railbird's failure to comply with Railtown's demands demonstrates a deliberate intent to continue willfully infringe Railtown's trademark.

32. Further, despite surrendering the RAILBIRD TAPHOUSE BREWERY registration, Railbird has not withdrawn an application for a design mark incorporating the words RAILBIRD TAPHOUSE // BREWERY which was filed on April 10, 2018, and has the serial number 87,871,329.  (Exhibit 5.)

## COUNT I
## TRADEMARK INFRINGEMENT OF THE REGISTERED MARK

33. Railtown incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

34. Railbird's actions, as described above, are likely to cause confusion, or to cause mistake, or to deceive consumers as to the origin, sponsorship or approval of Railbird's goods and services in violation of Section 32(1) of the Lanham Act, 15 U.S.C. §1114(a).

35. Railbird's actions are likely to confuse and deceive members of the consuming public.

36. Railbird's actions have confused and deceived members of the consuming public who have lodged complaints with Railtown.

37. Railbird was notified that the unlawful conduct described above constituted trademark infringement.  The infringement by Railbird is therefore deliberate, done for the purpose of confusing purchasers, and for trading on the goodwill associated with the Railtown Mark and involves such circumstances that damages should be increased by three times actual damages, as well as include an award for reasonable attorneys' fees and costs under 15 U.S.C. § 1117.

38. Railtown has no adequate remedy at law.

39. Railbird's infringing use of the Railtown Mark will likely continue unless enjoined by this Court.

WHEREFORE, Railtown respectfully requests that this Court enter a judgment in its favor for its lost profits, Railbird's profits on the infringing sales, actual and consequential damages, treble damages, attorney fees and costs, equitable relief in the form of an injunction and such other and further relief as the Court may deem just, fair and equitable.

## COUNT II
## FALSE DESIGNATION OF ORIGIN/FEDERAL UNFAIR COMPETITION

40. Railtown incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

41. Railbird's activities described above constitute the knowing use of an infringing mark constituting false designation of origin, false and misleading description of fact, false and misleading representation of fact, false advertising and unfair competition, all in violation of 15 U.S.C. §1125(a).

42. Railbird's unauthorized and repeated use of the infringing mark in commerce to falsely represent, describe and/or designate the origin of the products has caused confusion, mistake and/or deception as to the (a) affiliation, connection or association of Railbird with Railtown, and/or (b) origin, sponsorship or approval of Railbird's goods and services by Railtown, in violation of § 43(a) of the Lanham Act, 15 USC § 1125(a).

43. Railbird was notified that its unlawful conduct constituted trademark infringement.  The infringement by Railbird is therefore deliberate, done for the purpose of confusing purchasers, and for trading on the goodwill associated with the Railtown Mark, and involves such circumstances that damages should be increased by three times actual damages, as well as include an award for reasonable attorneys' fees and costs under 15 U.S.C. § 1117.

44. Railtown has no adequate remedy at law.

45. Railbird's false designation of origin and misrepresentations will likely continue unless enjoined by this Court.

WHEREFORE, Railtown respectfully requests that this Court enter a judgment in its favor for its lost profits, Railbird's profits on the infringing sales, actual and consequential damages, treble damages, attorney fees and costs, equitable relief in the form of an injunction and such other and further relief as the Court may deem just, fair and equitable.

## COUNT III
### TRADEMARK INFRINGEMENT UNDER COMMON LAW

46. Railtown incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

47. Railtown owns and/or enjoys exclusive common law rights in the Railtown Mark.

48. Railbird's use and promotion of its goods and services as described above constitutes unfair competition and infringement of Railtown's common law trademark rights.

49. Railbird's conduct has damaged, and continues to damage, Railtown's business, reputation and goodwill.

50. Railbird's infringing conduct will likely continue unless enjoined by this Court.

WHEREFORE, Railtown respectfully requests that this Court enter a judgment in its favor for its lost profits, Railbird's profits on the infringing sales, actual and consequential damages, treble damages, attorney fees and costs, equitable relief in the form of an injunction and such other and further relief as the Court may deem just, fair and equitable.

## COUNT IV
### UNFAIR COMPETITION UNDER COMMON LAW

51. Railtown incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

52. As a result of its actions as described above, Railbird has misappropriated valuable property rights of Railtown, is seeking to trade on the goodwill symbolized by Railtown's distinctive Railtown Mark, and is thereby likely to confuse and deceive members of the purchasing public.

53. Railtown has no adequate remedy at law.

54. Railbird's false designation of origin and misrepresentations will likely continue unless enjoined by this Court.

WHEREFORE, Railtown respectfully requests that this Court enter a judgment in its favor for its lost profits, Railbird's profits on the infringing sales, actual and consequential damages, treble damages, attorney fees and costs, equitable relief in the form of an injunction and such other and further relief as the Court may deem just, fair and equitable.

## COUNT V
## ACCOUNTING

55. Railtown incorporates by reference all previous allegations of this Complaint as if specifically set forth herein.

56. This Court has the general equitable powers to compel Railbird to render an accounting to Railtown for all profits unlawfully gained by Railbird's infringement of Railtown's intellectual property rights and other actions related thereto.

57. Without an accounting, Railtown cannot determine the amount of profits gained by Railbird through its infringing sales of its goods and services, how it was spent or used, and how it may best be recovered.

58. Railtown requests an accounting.

WHEREFORE, Railtown respectfully requests that this Court enter a judgment in its favor for its lost profits, Railbird's profits on the infringing sales, actual and consequential

damages, treble damages, attorney fees and costs, equitable relief in the form of an injunction and such other and further relief as the Court may deem just, fair and equitable.

## **PRAYER FOR RELIEF**

WHEREFORE, Railtown respectfully requests that this Court:

1. Make a determination that Railbird has infringed Railtown's Mark under the Lanham Act and common law;

2. Issue injunctive relief pursuant to 15 U.S.C. § 1116 and other applicable laws, enjoining and restraining Railbird, its officers, agents, servants, employees and attorneys and all persons in privity or active concert with it from continued and further direct infringement or inducing or contributing to infringement, of Railtown's trademark rights;

3. Issue an Order directing Railbird to immediately remove all uses of marks similar to the Railtown Mark from all aspects of its business, including but not limited to signage, menus, products, marketing materials, websites, advertisements, publications, social media, and/or newsletters owned, operated or controlled by Railbird;

4. Order Railbird to pay Railtown such damages, compensatory or otherwise, together with prejudgment interest thereon, as Railtown has sustained, as a consequence of Railbird's wrongful acts, and to account for and to return to Railtown any moneys, profits and advantages wrongfully gained by Railbird;

5. Order an accounting by Railbird to Railtown for profits and actual damages resulting from its infringing activities;

6. Order damages increased to the maximum of three times the compensatory damages, pursuant to 15 U.S.C. §1117(a), due to the willful and deliberate nature of the infringement;

7. Issue an order directing Railbird to file with this Court and serve on Railtown, within 30 days after the issuance of an injunction, a report in writing under oath setting forth in detail the manner and form in which Railbird has complied with the injunction;

8. Order Railbird to cease any and all use of the infringing mark in company or business names, domain names, on websites and/or in any marketing or promotional materials;

9. Order Railbird to pay Railtown all attorney fees, expenses, and costs incurred in this action;

10. Order such other and further relief as the Court may deem just, fair and equitable.

    Respectfully submitted,

    MILLER, CANFIELD, PADDOCK AND STONE, P.L.C.

    By: /s/ Joseph M. Infante
        Joseph M. Infante (P68719)
        Kimberly A. Berger (P56165)
        Attorneys for Plaintiff
        99 Monroe Avenue, Suite 1200
        Grand Rapids, MI 49503
        (616) 776-6333
        infante@millercanfield.com

Dated: August 27, 2018

31940206.1\156870-00001